UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Bankr. No. 13-30001 |
| | ) | Chapter 7 |
| FRANCIS MARTIN LANGAN | ) | |
| SSN/ITIN xxx-xx-0899 | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| ACCOUNTS MANAGEMENT, INC. | ) | Adv. No. 13-3003 |
| | ) | |
| Plaintiff | ) | |
| -vs- | ) | |
| | ) | |
| FRANCIS MARTIN LANGAN, | ) | DECISION RE:  DEBTOR-DEFENDANT'S |
| DEBRA RAWLINS, | ) | MOTION TO DISMISS [UNDER] RULE 12(b) |
| TOM D. TOBIN, | ) | |
| and MARC S. FEINSTEIN | ) | |
| | ) | |
| Defendants. | ) | |

The matter before the Court is Debtor-Defendant Francis Martin Langan's Motion to Dismiss [under Fed.R.Civ.P.] 12(b). This is a core proceeding under 28 U.S.C. § 157(b)(2). The Court enters these findings and conclusions pursuant to Fed.R.Bankr.P. 7052. For the reasons discussed below, the Court will grant the motion.

Summary of Material Facts

Beginning in February 2009, Anna Langan received residential medical care from Avera Rosebud Country Care Center. She and her husband, Francis Martin Langan, held joint assets that rendered her ineligible for Medicaid assistance. The Langans made only one payment to Avera Rosebud County Care Center, although Anna Langan received both Social Security and a small pension. When she died several months

later, her obligation to Avera Rosebud Country Care Center totaled $33,597.72. Accruing interest greatly increased the claim.

Though the record, especially as reflected in this adversary proceeding, is scant, Accounts Management, Inc. ("AMI"), an assignee of Avera Rosebud Country Care Center, commenced a state court collection action against Francis Martin Langan in 2012.[1] That action culminated in a Stipulation of Dismissal filed on December 7, 2012. Under the stipulation, Francis Martin Langan paid $28,000.00 to AMI on its claim arising from Anna Langan's care.[2] The stipulation further provided, *inter alia*:

> Both parties further expressly agree that Langan shall not file for bankruptcy relief under any Chapter of 11 U.S.C. Section 101 et. seq. for a minimum of 91 days following AMI's receipt of the settlement payment contemplated herein. In the event Langan breaches this provision of the parties' Agreement, this settlement and payment shall be deemed to have occurred 91 days prior to the date Langan files for relief. Should this provision be challenged and/or disallowed by the case or United States Trustee, or the Bankruptcy Court, the parties expressly agree that this settlement and payment was made under circumstances set forth in 11 [U.S.C. §] 547(c)(1) or (2), and if the payment under this settlement is ordered to be returned to Langan's bankruptcy estate, than AMI shall be entitled to the full amount of its claim set forth in Gregory CIV. 12-46, plus accrued interest until paid, as an uncontested, allowed claim.

---

[1] Documents filed by AMI and Debtor in Debtor's main bankruptcy case, Bankr. No. 13-30001, regarding AMI's Motion for Relief from Automatic Stay, provide some details about the state court action, as does Chapter 7 Trustee Forrest C. Allred's complaint and AMI's answer in Adv. No. 13-3001. *See infra* note 2.

[2] Trustee Allred, who is administering Debtor's chapter 7 case, Bankr. No. 13-30001, has commenced an adversary proceeding, Adv. No. 13-3001, against AMI to recover Debtor's $28,000.00 settlement payment to AMI as a preferential transfer under 11 U.S.C. § 547(b). That adversary proceeding is not yet resolved.

Francis Martin Langan ("Debtor") filed a chapter 7 petition in bankruptcy on January 15, 2013. AMI commenced this adversary proceeding against Debtor and three others on August 14, 2013, seeking a determination, by amended complaint (doc. 12), that its claim against Debtor is nondischargeable under 11 U.S.C. § 523(a)(2), (4), (5), and (15).[3] AMI's amended complaint is premised on allegations that Debtor failed to pay for his wife's care, even though Debtor had assets to do so, including his wife's monthly income, to which he had access as her fiduciary. AMI also alleges Debtor manipulated assets, including real property and the proceeds from the sale of real property, in an effort to secure Medicaid coverage for his wife's care. AMI alleges the other defendants, Attorney Tom D. Tobin, Attorney Marc S. Feinstein,[4] and Debtor's niece, Debra Rawlins, participated in these asset manipulations. AMI wants Attorney Tobin to repay the bankruptcy estate for fees he received from Debtor for legal services regarding the disputed asset manipulations; it wanted Attorney Feinstein to repay the bankruptcy estate for legal fees received after November 19, 2009, when the South Dakota Department of Social Services denied Medicaid coverage for Anna Langan; and it wants Defendant Rawlins to repay the bankruptcy estate $6,145.00 for a "discount" she received from Debtor when he assigned a contract for deed to her.

---

[3] Contrary to Bankr. D.S.D. R. 7001-2(c), AMI does not specify whether it is seeking relief under § 523(a)(2)(A) or § 523(a)(2)(B).

[4] On AMI and Defendant Feinstein's joint motion, Defendant Feinstein was dismissed from this adversary proceeding on September 26, 2013 (doc. 25).

Debtor-Defendant moved to dismiss AMI's amended complaint against him under Fed.R.Civ.P. 12(b), alleging it was not timely filed, the debt has already been discharged, AMI has not alleged facts establishing Debtor was a fiduciary under § 523(a)(4), AMI has not alleged facts showing the debt qualified as a domestic support obligation under § 523(a)(5), and AMI has not alleged the debt arose from a separation agreement or divorce decree as required by § 523(a)(15) (doc. 16). Debtor-Defendant also argued, without elaboration, AMI failed to include Trustee Allred as an indispensable party. In its response to Debtor's motion to dismiss, AMI provided some statutes and case law in support of its amended complaint (doc. 21). The matter was taken under advisement.

Fed.R.Civ.P. 12(b)

Federal Rule of Civil Procedure 12(b) is applicable to adversary proceedings. Fed.R.Bankr.P. 7012. Rule 12(b) provides a party may assert, by motion, certain defenses, including the failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). When that defense is raised, the Court considers the plaintiff's factual allegations as true and affords the plaintiff all reasonable inferences from those allegations. *Butler v. Bank of America, N.A.*, 690 F.3d 959, 961 (8th Cir. 2012). To survive dismissal under Rule 12(b)(6), the complaint must

> "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, [556] U.S. [662], 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a "sheer possibility." *Id*. It is not, however, a "probability requirement." *Id*. Thus, "a well-pleaded complaint may proceed even if it strikes a savvy

> judge that actual proof of the facts alleged is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).
>
> A complaint states a plausible claim for relief if its "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. Several principles guide us in determining whether a complaint meets this standard. First, the court must take the plaintiff's factual allegations as true. *Id*. at 1949–50. This tenet does not apply, however, to legal conclusions or "formulaic recitation of the elements of a cause of action"; such allegations may properly be set aside. *Id*. (quoting *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). In addition, some factual allegations may be so indeterminate that they require "further factual enhancement" in order to state a claim. *Id*. (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955;) *see also Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir.2009).

*Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009), quoted in *Vang v. PNC Mortg., Inc.*, 517 Fed.Appx. 523, 525-26 (8th Cir. 2013).

Timeliness of AMI's Complaint

In a chapter 7 case, a creditor must file a nondischargeability complaint under 11 U.S.C. § 523(a)(2), (4), or (6) within 60 days after the first date set for the meeting of creditors. Fed.R.Bankr.P. 4007(c). In this case, that deadline was April 15, 2013. While it sought an extension of the deadline (doc. 34), AMI was denied such relief because it did not file its motion for an extension before the original deadline expired (doc. 59). Consequently, AMI's commencement of this adversary proceeding on August 14, 2013 was untimely with respect to its claims under § 523(a)(2) and § 523(a)(4).

However, in a chapter 7 case, a nondischargeability complaint under the subsections of § 523(a) other than (2), (4), and (6) may be filed at any time. 11

-5-

U.S.C. § 523(c) and Fed.R.Bankr.P. 4007(b) and (c).  Accordingly, AMI's commencement of this adversary proceeding was timely with respect to its claims under § 523(a)(5) and § 523(a)(15).

The Court's entry of Debtor's general discharge order had no bearing on the timeliness of AMI's nondischargeability complaint.  Though a general discharge order may be entered before a nondischargeability complaint is filed or while a nondischargeability adversary proceeding is pending, 11 U.S.C. § 727(b) and § 523(a) except from that general discharge order any pre-petition claim subsequently determined to be nondischargeable.

### AMI's Allegations Against Debtor Under § 523(a)(5)

Section 523(a)(5) excepts from a debtor's general discharge any debt "for a domestic support obligation."

> The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is—
>
> (A) owed to or recoverable by—
>
> (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
>
> (ii) a governmental unit;
>
> (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;

>    (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—
>
>    >    (i) a separation agreement, divorce decree, or property settlement agreement;
>    >
>    >    (ii) an order of a court of record; or
>    >
>    >    (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
>
>    (D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

11 U.S.C. § 101(14A).  Obviously, AMI is not Debtor's spouse, former spouse, or child, and AMI is not a governmental unit.  In its response to the motion to dismiss, AMI cites *In re Carlson*, 176 B.R. 890, 893 (Bankr. D. Minn. 1995), for the proposition that a debt owed to a third person may still be nondischargeable under § 523(a)(5).  However, in *Carlson*, the debt at issue was owed to a governmental entity for services provided to the debtors' son.  *Id*. at 891-92.  The *Carlson* decision did not broaden the application of § 101(14A) so as to make § 523(a)(5) applicable to AMI, a nongovernmental entity.

The second question presented by the definition at § 101(14A) is whether the subject debt was a domestic support obligation that Anna Langan voluntarily assigned to AMI for collection purposes.

>    The definition of "domestic support obligation" added to the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA) "encompasses debts that were considered alimony,

-7-

maintenance or support under prior section 523(a)(5) [of the Bankruptcy Code], but is broader in several respects." [2 COLLIER ON BANKRUPTCY ¶ 101.14A, pp. 101–93 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2012)]; *In re Perlis*, 467 B.R. 240 (Bankr. N.D. Ga. 2012) (broad interpretation of domestic support obligations). Thus, this definition not only encompasses obligations owed to or recoverable by a spouse, former spouse or child of the debtor, or child's parent, legal guardian or responsible relative, but also obligations recoverable by a governmental unit and non-governmental units if voluntarily assigned for purposes of collection. *Id.*

*In re Efron*, 495 B.R. 166, 174-75 (Bankr. D.P.R. 2013). AMI has not proffered anything to suggest Anna Langan had a domestic support claim against Debtor that she voluntarily assigned to AMI.

Finally, AMI has not identified any case law–and the Court has not found any case law–to suggest a family support obligation created by statute, such as S.D.C.L. § 25-2-11,[5] may create the type of claim encompassed by § 101(14A). Therefore, Debtor's motion will be granted to the extent AMI seeks relief under § 523(a)(5).

AMI's Allegations Against Debtor Under § 523(a)(15)

Section 523(a)(15) excepts from a debtor's general discharge any debt

> to a spouse, former spouse, or child of the debtor and not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, or a determination made in accordance with State or territorial law by a governmental unit[.]

---

[5] Section 25-2-11 of the South Dakota code provides:

Every husband and wife shall be jointly and severally liable for the purchase price, if such price be stated or agreed upon at the time of purchase, and if not so stated or agreed upon, for the reasonable value of all the necessaries of life, consisting of food, clothing, and fuel purchased by either husband or wife for their family while they are living together as husband and wife.

As previously noted, AMI is not Debtor's spouse, former spouse, or child, and the debt did not arise from a divorce or separation agreement. To the extent AMI has a claim arising from the pre-petition stipulation between Debtor and AMI, or even has a claim against Debtor arising under S.D.C.L. § 25-2-11, that debt is still not one owed to AMI as Debtor's spouse, former spouse, or child. *Lakeman v. Weed* (*In re Weed*), 479 B.R. 533, 536-39 (Bankr. D. Minn. 2012). Further, the phrase "or other order of a court of record" in § 523(a)(15) does not stand alone to except from discharge *any* court-ordered obligation. *See id*. Accordingly, AMI's claim cannot be excepted from discharge under § 523(a)(15).

AMI has not sought a determination of nondischargeability under any subsection of § 523(a) that survives Debtor-Defendant's motion to dismiss. Accordingly, an order dismissing AMI's amended complaint as to Debtor-Defendant will be entered.[6]

Dated: October 18, 2013.

BY THE COURT:

Charles L. Nail, Jr.
Bankruptcy Judge

NOTICE OF ENTRY
Under Fed.R.Bankr.P. 9022(a)

This order/judgment was entered on the date shown above.

Frederick M. Entwistle
Clerk, U.S. Bankruptcy Court
District of South Dakota

---

[6] While Debtor-Defendant requested costs in his motion to dismiss, he has not filed a separate motion under Fed.R.Bankr.P. 9011(c). Accordingly, that issue is not addressed herein.